UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARK A. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-262 |
| | ) | (PHILLIPS /SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal

Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding

disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 7] and

Defendant's Motion for Summary Judgment [Doc. 14]. Plaintiff Mark A. Morgan ("Plaintiff") seeks

judicial review of the decision of Administrative Law Judge ("ALJ") Jack B. Williams denying him

benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social

Security ("the Commissioner").

On April 21, 2005, Plaintiff filed an application for disability insurance benefits ("DIB")

and supplemental security income ("SSI"). [Tr. 171-78]. On both applications, Plaintiff alleged a

period of disability which began on June 16, 2004. [Tr. 171, 174]. After his application was denied

initially and also denied upon reconsideration, Plaintiff requested a hearing. On May 10, 2007, a

hearing was held before ALJ Jack B. Williams to review the determination of Plaintiff's claim.

[Supplemental Tr. 3-45]. On October 26, 2007, the ALJ found that Plaintiff was not under a

disability from June 16, 2004, through the date of the decision. [Tr. 77-89]. The Appeals Council

granted Plaintiff's request for review of the ALJ's decision, and on February 11, 2008, it remanded

Plaintiff's applications to the ALJ for a second hearing. [Tr. 90-92]. On June 25, 2008, the ALJ

held a second hearing pursuant to the Appeals Council's remand order. [Tr. 23-64]. On September

29, 2008, the ALJ again found that Plaintiff was not under a disability from June 16, 2004, through

the date of the decision. [Tr. 13-22]. On April 23, 2009, the Appeals Council denied Plaintiff's

request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

[Tr. 1-5]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3).

## I.  ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through         December 30, 2004.

2.  The claimant has not engaged in substantial gainful activity since June 16, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.  The claimant has the following severe combination of impairments: left shoulder rotator cuff tear; hepatitis A and C with liver cirrhosis; left knee mild degenerative joint disease with suprapatellar and proximal tibia spurs; history of lumbar spine compression fracture at T-11 with mild to moderate degenerative disc disease; insulin-dependent diabetes mellitus with early neuropathy of the toes; major depressive disorder, moderate; pain disorder; borderline to low average intellectual functioning; and remote history of mixed alcohol/substance abuse in remission (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is unable to use either arm over shoulder level; and can only do occasional bending and stooping. In addition, emotionally, he has moderate limitations, except he has marked limitations for performing complex or detailed work, but he can perform unskilled to semiskilled work.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.   The claimant was born on July 16, 1957 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date, and he is now 51 years old, which is defined as an individual "closely approaching advanced age" (20 CFR 404.1563 and 416.963).

8.   The claimant has marginal literacy and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from June 16, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 15-22].


## II.   DISABILITY ELIGIBILITY

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203

F.3d 388, 391 (6th Cir. 1999) (citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987)).


## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." <u>Blakley v. Comm'r of Soc. Sec.</u>, 581 F.3d 399, 405 (6th Cir. 2009) (citing <u>Key v. Callahan</u>, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Rogers v. Comm'r of Soc. Sec.</u>,  486 F.3d 234, 241 (6th Cir. 2007); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citing <u>Consol. Edison v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. <u>Crisp v. Sec'y of Health & Human Servs.</u>, 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." <u>Buxton v. Halter</u>, 246 F.3d 762, 773 (6th Cir. 2001) (quoting <u>Mullen v. Bowen</u>, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." <u>Walters</u>, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by

substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," Wilson, 378 F.3d at 545, and the Court therefore "cannot excuse the denial of a mandatory procedural protection...simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination, id. at 546. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and "will not result in reversible error *absent a showing that the claimant has been prejudiced on the*

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

*merits or deprived of substantial rights because of the [ALJ]'s procedural lapses*." Wilson, 378

F.3d at 546-47 (emphasis added) (quoting Connor v. United States Civil Serv. Comm'n, 721 F.2d

1054, 1056 (6th Cir. 1983)).  Thus, an ALJ's procedural error is harmless if his ultimate decision

was supported by substantial evidence *and* the error did not deprive the claimant of an important

benefit or safeguard.  See id. at 547 (holding that an ALJ's violation of the rules for evaluating the

opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an

"important procedural safeguard" and therefore not a harmless error).  If a procedural error is not

harmless, then it warrants reversing and remanding the Commissioner's disability determination.

Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial

evidence to support the ALJ's ultimate decision, requires that a reviewing court "reverse and remand

unless the error is a harmless *de minimis* procedural violation").

 On review, Plaintiff bears the burden of proving her entitlement to benefits.  Boyes v. Sec'y.

of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d

1230 (6th Cir. 1971)).


## IV. ANALYSIS

 Plaintiff makes three arguments on appeal.  First, Plaintiff contends that this case must be

remanded to the Commissioner for reconsideration because the ALJ "failed to properly assist [him]

in the development of his case."  [Doc. 8 at 8].  Plaintiff argues that the ALJ "did not attempt to

obtain all of his treatment records," [Doc. 8 at 8], and therefore "failed in his duty to assist [a] pro

se [claimant] in the development of the necessary records to support his claim of disability," [Doc.

8 at 10].

 Plaintiff next contends that the ALJ's determination of both his physical and mental residual

functional capacity ("RFC") was not supported by substantial evidence. Plaintiff argues that the ALJ made the following errors when determining his physical RFC:

> (i) failing to accord proper weight to the opinion of Plaintiff's treating physician, Dr. Ingrid Fernandes, M.D., [Doc. 8 at 10-12];

> (ii) adopting the opinions of an examining state disability determination services ("DDS") physician , Dr. Jeffrey S. Summers, M.D., and a non-examining, consultative DDS physician, Dr. Louise G. Patikas, M.D., despite the fact that both opinions were "rendered prior to the receipt of objective medical testing which revealed" that Plaintiff had additional impairments that caused work-related physical limitations, [Doc. 8 at 12-15]; and

> (iii) failing to find that Plaintiff was limited in his ability to kneel, squat, and climb despite the fact that Dr. Summers, whose opinion was purportedly accorded great weight and adopted, stated that Plaintiff was so limited, [Doc. 8 at 13].

Plaintiff argues that the ALJ erred when determining his mental RFC by failing to specifically find that he was moderately limited in his abilities to persist and concentrate, work with the public, and adapt. Plaintiff argues that such a finding was compelled because it was the conclusion stated in "the only medical opinion of record regarding [his] work-related mental limitations"–an opinion that was purportedly given great weight by the ALJ. [Doc. 8 at 15]. Plaintiff contends that the errors listed above caused the ALJ to make an overall RFC determination that was incorrect and unsupported by the record. Plaintiff concludes that the ALJ's finding that he has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with some additional restrictions, [Tr. 17], was not supported by substantial evidence.

Finally, Plaintiff contends that the ALJ's finding that "there are jobs that exist in significant numbers in the national economy" that he can perform, [Tr. 21], was incorrect because it was reached through improper application of the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2. [Doc. 8 at 16-17]. Plaintiff argues that the ALJ improperly relied upon Guidelines Rule

202.10 based on a finding that Plaintiff had "marginal literacy" and the ability to communicate in English. [Doc. 8 at 16]. Plaintiff asserts that he was–and is–functionally illiterate, and the ALJ therefore should have relied upon Guidelines Rule 202.09, which contemplates a claimant who is "illiterate or unable to communicate in English," [Doc. 8 at 16]. Plaintiff argues that Rule 202.09 compelled the ALJ to conclude that he was disabled because no suitable jobs existed for him to perform. Plaintiff concludes that the ALJ's failure to rely upon Rule 202.09 when reaching his ultimate disability determination is an error that warrants remand.

In response, the Commissioner first contends that Plaintiff did not show that he was "incapable of presenting an effective case" or otherwise establish that there were special circumstances that imposed upon the ALJ a "special heightened duty to develop the record." [Doc. 15 at 12]. Accordingly, the Commissioner argues that Plaintiff bore the "ultimate burden of proving disability," and that the ALJ properly considered Plaintiff's DIB and SSI claims. [Doc. 15 at 12].

Next, the Commissioner contends that the ALJ properly considered the entire record, and that substantial evidence supported his determination of Plaintiff's RFC. The Commissioner responds to Plaintiff's specific allegations of error in the ALJ's physical RFC determination as follows:

> (i) the ALJ's decision to discount the weight accorded to Dr. Fernandes's opinion was appropriate because the opinion was inconsistent with clinical evidence, and inconsistent with Dr. Fernandes's own "treating records showing that Plaintiff's pain was controlled with medication and that he was encouraged to continue with increased physical activity," [Doc. 15 at 14];

> (ii) the ALJ's reliance on the opinion of Dr. Summers was appropriate even in light of the additional diagnostic tests that were conducted after the opinion was provided because those tests were consistent with the opinion, [Doc. 15 at 14]; and

> (iii) the ALJ's RFC finding *did* in fact incorporate Dr. Summers's opinion that Plaintiff was limited in his ability to kneel, squat, and climb because Dr. Summers only stated that Plaintiff "would have difficulty engaging in those activities 'on a frequent basis'" instead of stating that Plaintiff was totally precluded from performing them, [Doc. 15 at 13].

The Commissioner responds to Plaintiff's allegation of error in the ALJ's mental RFC determination by arguing simply that the ALJ in fact "discussed Ms. Garland's findings at length," and appropriately incorporated her opinion in his mental RFC finding.. [Doc. 15 at 13]. The Commissioner concludes that substantial evidence supported the ALJ's decision that Plaintiff was able to perform work that exists in the national economy, and that he was therefore not under a disability and not entitled to DIB or SSI payments.

Finally, the Commissioner contends that the ALJ's finding that Plaintiff had "marginal literacy" and the ability to communicate in English was supported by substantial evidence. [Doc. 15 at 16]. Accordingly, the Commissioner concludes that "the ALJ's use of rules 202.17 and 202.10 *as guides*" was not error. [Doc. 15 at 17] (emphasis added). The Commissioner also argues that the ALJ's finding that suitable jobs existed for the Plaintiff was based on testimony from a vocational expert, and *not* on a strict application of any rule in the Medical-Vocational Guidelines. [Doc. 15 at 15-16].

The Court considers Plaintiff's three primary contentions in turn.

## A.     The ALJ properly conducted the hearing on Plaintiff's DIB and SSI claims.

Plaintiff contends that this case must be remanded to the Commissioner for reconsideration because the ALJ "failed to properly assist [him] in the development of his case." [Doc. 8 at 8]. Plaintiff argues that the ALJ "did not attempt to obtain all of his treatment records," [Doc. 8 at 8],

and therefore "failed in his duty to assist [a] pro se [claimant] in the development of the necessary records to support his claim of disability," [Doc. 8 at 10]. Plaintiff argues that because he was without representation at his hearing before the ALJ, the ALJ was bound by the following special affirmative duty:

> "[T]he ALJ had a duty to assist [Plaintiff] in the development of the record, or at the very least he could have asked Plaintiff to obtain the treatment records [that were known to be missing], and explained the consequences of not having current medical records to support his claim. The ALJ has a duty to obtain pertinent, available medical records [when their existence comes] to his or her attention during the course of the hearing."

[Doc. 8 at 9] (citing <u>Carter v. Chater</u>, 73 F.3d 1019, 1022 (10th Cir. 1996)).

Plaintiff represents that although the ALJ was aware of the existence of three sets of medical records that were not part of the administrative record, he made no "attempts whatsoever to obtain these records or [to] inquire further."[2] [Doc. 8 at 9]. Plaintiff contends that "it is obvious that the ALJ failed in his duty," and he concludes that this failure warrants remand. [Doc. 8 at 10].

In response, the Commissioner contends that Plaintiff did not show that he was "incapable of presenting an effective case" or otherwise establish that there were special circumstances that imposed upon the ALJ a "special heightened duty to develop the record." [Doc. 15 at 12]. The Commissioner argues that "[a]bsent a showing of such special circumstances, Plaintiff [bore] the ultimate burden of proving disability." [Doc. 15 at 12] (citing <u>Wilson v. Comm'r of Soc. Sec.</u>, 280 Fed. App'x 456, 459 (6th Cir. 2008)). Further, the Commissioner contends that even if the ALJ did

---

[2]  The three sets of Plaintiff's medical records that allegedly exist but are not part of the administrative record are (1) records of Plaintiff's treatment for "complications from his diabetes" at St. Mary's Medical Center that ended on May 9, 2007; (2) records from an unnamed hepatitis specialist who treated Plaintiff, <u>see</u> [Supplemental Tr. 24]; and (3) records from Plaintiff's hospitalization for pancreatitis in early May 2007, <u>see</u> [Tr. 52]. [Doc. 8 at 8-9].

have a special affirmative duty to assist Plaintiff by making an effort to obtain missing medical records, Plaintiff has not shown that the ALJ breached that duty. The Commissioner argues that "Plaintiff has not pointed to any evidence" indicating that the three sets of missing medical records bear on the substantive factual issues in this case. [Doc. 15 at 12]. The Commissioner also argues that although Plaintiff is now represented by counsel, he has not produced the missing records himself nor has he "made any assertion that the records warrant remand under sentence six of 42 U.S.C. § 405(g)."[3] [Doc. 15 at 12].

As a starting point for the Court's analysis, Plaintiff correctly states that "Social Security proceedings are inquisitorial rather than adversarial," and that an ALJ therefore has a duty "to investigate the facts and develop the arguments both for and against granting benefits." [Doc. 8 at 10] (quoting Sims v. Apfel, 530 U.S. 103, 111 (2000)). But Plaintiff misstates the law imposing a further duty on the ALJ–the "special, heightened duty" to develop the evidentiary record in some circumstances. See Wilson, 280 Fed. App'x at 459.

Generally, a DIB or SSI claimant has to prove to the Social Security Administration ("SSA") that he is disabled in order to receive benefits. 20 C.F.R. § 404.1512(a); see Walters, 127 F.3d at 529. Therefore, the claimant "must bring to [the SSA's] attention everything that shows that [he is] disabled." 20 C.F.R. § 404.1512(a). "This means that [the claimant] must furnish medical and other evidence that [the SSA] can use to reach conclusions about [the claimant's] medical impairment(s) and, if material to the determination of whether [the claimant is] disabled, its effect on [his] ability

_____

[3] The relevant portion of sentence six states that "[t]he court may...at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

to work on a sustained basis."  Id.  The SSA will consider only  impairments that the claimant says

he has or about which it receives evidence.  Id.

The Court of Appeals for the Sixth Circuit has explained that there is an exception to the

general rule that a claimant is responsible for furnishing the medical and other evidence to support

his application for benefits.  In Wilson, 280 Fed. App'x at 459, the Court of Appeals re-examined

and confirmed the rule that under special circumstances an ALJ has a duty not only to *investigate*

the facts and medical evidence presented by the claimant, but also to affirmatively help the claimant

to *develop* facts and medical evidence.  The Court stated as follows:

> "*Special Duty.*  Though [plaintiff] acknowledges that she carries the
> burden of establishing disability, see 20 C.F.R. § 404.1512(a), she
> relies on Lashley v. Secretary of HHS, 708 F.2d 1048 (6th Cir. 1983),
> to argue that a special, heightened duty required the ALJ to develop
> the record here.  In Lashley, this court reversed a denial of disability
> benefits partly because the ALJ failed to develop 'a full and fair
> record.'  Id. at 1051.  In that case, however, the claimant was a 79
> year-old with a fifth grade education, who after suffering two strokes
> had trouble reading, writing, and reasoning.  Id. at 1049.  At
> Lashley's hearing, the ALJ conducted a superficial examination that
> failed to heed the claimant's obvious confusion and inability to
> effectively present his case.  Id. at 1052.  Finding this process
> insufficient, the panel held that **under special circumstances–when
> a claimant is (1) without counsel, (2) incapable of presenting an
> effective case, and (3) unfamiliar with hearing procedures–an
> ALJ has a special, heightened duty to develop the record.**  Id. at
> 1051-52.
>
> Absent such special circumstances–which do not exist in this
> case–this court repeatedly affirms that the claimant bears the ultimate
> burden of proving disability.  See, e.g., Trandafir v. Comm'r of Soc.
> Sec., 58 Fed. App'x 113, 115 (6th Cir. 2003).  Though [plaintiff]
> chose to proceed without counsel, **the hearing transcript discloses
> her grasp of the proceedings and the adequacy of her case
> presentation to the ALJ.**"

Wilson, 280 Fed. App'x at 459 (bold emphasis added).

The "special duty" rule articulated in <u>Lashley</u> and confirmed in <u>Wilson</u> is primarily a rule that requires extra effort and care from ALJs *in their administrative courtrooms*. ALJs are meant to carry out their special duty so that the inquisitorial hearings that they conduct are always fair and determinedly truth-seeking. It is clear from a full reading of <u>Lashley</u> and <u>Wilson</u> that the Court of Appeals intended to impose a duty on ALJs to develop the record to the fullest extent possible *in the courtroom*, by taking extra time and extra care in questioning the claimant and other witnesses during the hearing, and by making specific requests for additional documentation, testimony, or evidence that is unavailable at the hearing, but would be helpful in rendering a decision. The Court of Appeals did not intend to impose a duty on ALJs to serve as a pro se claimant's investigator, researcher, records custodian, or advocate *outside of the courtroom*. See <u>Lashley</u>, 708 F.2d at 1051 ("the administrative law judge must not become a partisan and assume the role of counsel"). In other words, if "special circumstances" exist at a hearing and the ALJ becomes aware of relevant medical records that are not part of the administrative record, the ALJ has a duty to (1) advise the claimant to obtain and submit those records; (2) suggest ways that the claimant might obtain the records; (3) make sure that the claimant understands how to submit the records; (4) refrain from making a disability determination until the claimant has been given a reasonable amount of time to provide the records; and (5) explain to the claimant how the disability determination will be made if the records are not submitted. <u>See</u> <u>id.</u> at 1052-53 (finding that the "superficial quality of questioning" *at* the ALJ hearing was the breach of the ALJ's special duty). But the ALJ's "special, heightened duty" typically does *not* impose upon him an affirmative duty to obtain the records

himself.[4]

Plaintiff apparently disagrees with this Court's reading of <u>Lashley</u> and <u>Wilson</u>, and contends that the ALJ's "special duty" is so broad that it actually requires an ALJ to "obtain pertinent, available medical records [when their existence comes] to his or her attention during the course of the hearing."  [Doc. 8 at 9].  Plaintiff relies upon several cases from other Circuits to support his argument that an ALJ is duty-bound to actually obtain missing records in a "special circumstances" case.[5]  [Doc. 8 at 9-10].  The Court is not persuaded by these cases, and it concludes that the rule in this Circuit as stated in <u>Wilson</u> is clear.

Further, the Court is not persuaded that the cases to which Plaintiff cites truly contemplated imposing a duty on ALJs to actually locate and obtain medical records on behalf of a claimant.  Most of the cited cases merely offer slightly different general articulations of an ALJ's "special, heightened duty."  <u>See, e.g.</u>, [Doc. 8 at 10] (citing <u>Melville v. Apfel</u>, 198 F.3d 45, 51 (2d Cir. 1999) ("[W]here the claimant is unrepresented by counsel, the ALJ has a duty to probe scrupulously and conscientiously into and explore all of the relevant facts, and to ensure that the record is adequate to support his decision."))  Plaintiff does cite one case, <u>Brown v. Shalala</u>, 44 F.3d 931, 935 (11th

_____

[4] The Court does not rule out the possibility that there may be some "special circumstances" cases where a claimant is so incapable of presenting his claim that the ALJ's "special, heightened duty to develop the record" might require him to actually obtain records.  Typically, however, the Court understands the ALJ's "special, heightened duty to develop the record" to be only as broad as explained herein.

[5] Plaintiff does cite to one unpublished case decided by the Court of Appeals for the Sixth Circuit, <u>Gabriel v. Sec. of Health & Human Servs.</u>, 746 F.2d 1476 (6th Cir. 1984).  [Doc. 8 at 9].  Because this case was unpublished, it is inappropriate for Plaintiff to rely on it without having first served a copy of the case on the Commissioner and the Court.  Notwithstanding this procedural error, the Court finds that the quotation from <u>Gabriel</u> provided by Plaintiff does not support his contention that an ALJ has an affirmative duty to obtain medical records in a "special circumstances" case.

Cir. 1995), in which a reviewing court held that an ALJ under a "special duty to develop the record" breached that duty because he did not actually obtain, or make an effort to obtain, some of the claimant's medical records. In Brown, the Court of Appeals for the Eleventh Circuit considered a pro se claimant who testified at her hearing before an ALJ that she was examined twice by her physician just prior to the hearing. 44 F.3d at 935. The ALJ "indicated that he would request updated records" from the physician, id. at 934, and he also "agreed" to procure a report from another treating source, stating that he would "send for records from him," id. at 935. The Court of Appeals held that the ALJ violated his "special duty" because he did not in fact obtain the records, and because he failed to even contact one of the doctors. Id. at 935.

This case is distinct from Brown because the ALJ in this case never "agreed" to obtain records and never told Plaintiff that he would do so. In the observance of his "special duty," an ALJ certainly *may* offer to obtain medical records for a claimant, but he is not *required* to obtain them. An ALJ is only under an affirmative duty to obtain medical records if he imposes that duty upon himself at the hearing. Once an ALJ has communicated to a claimant that he will intervene and directly obtain the claimant's medical records from a medical care provider, the ALJ must follow through or else he will commit a procedural error that warrants remand. This is so because a claimant who has been told that his medical records will be obtained and considered by the ALJ will likely not make an effort on his own to obtain and submit the records. The claimant will simply trust that the ALJ will follow through. If the ALJ then fails to do so, the claimant clearly will be prejudiced. The Court concludes that its interpretation of Wilson and Lashley is not inconsistent with the Court of Appeals for the Eleventh Circuit's holding in Brown.

Having set out the rule in this Circuit that an ALJ typically does not have an affirmative duty

to actually obtain medical records in a "special circumstances" case, the Court turns to this case. First, the Court finds that Plaintiff has not established that there were "special circumstances" at his ALJ hearing. Plaintiff was unrepresented at the hearing, but he has not shown that he was "incapable of presenting an effective case," or that he was "unfamiliar with hearing procedures." Wilson, 280 Fed. App'x at 459. The fact that Plaintiff had already participated in an earlier hearing before ALJ Jack B. Williams leads the Court to believe that Plaintiff was, if anything, *more* familiar with hearing procedures than the average DIB or SSI claimant, and thus less in need of special procedural protection. Further, the transcript [Tr. 23-64] of the hearing indicates that Plaintiff had a "grasp the proceedings," id., and presented his case to the ALJ adequately.

Further, the Court concludes that even if the ALJ had been under a special, heightened duty to assist Plaintiff in developing the record, he would not have been required to actually obtain the three sets of medical records that allegedly exist but were not part of the administrative record. Accordingly, the Court finds that the ALJ's failure to obtain these records was not error.

**B.      The ALJ properly determined Plaintiff's mental and physical RFC.**

Plaintiff contends that the ALJ's finding that he has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with some additional restrictions, [Tr. 17], was not supported by substantial evidence. Plaintiff argues that the ALJ committed errors when determining both his physical and mental RFC that resulted in an overall RFC determination that was incorrect and unsupported by the record.

### 1. *Physical RFC determination*

Plaintiff argues that the ALJ made the following errors when determining his physical RFC:

(i) failing to accord proper weight to the opinion of Plaintiff's treating physician, Dr. Ingrid Fernandes, M.D., [Doc. 8 at 10-12];

(ii) adopting the opinions of examining DDS physician Dr. Jeffrey S. Summers, M.D., and non-examining, consultative DDS physician Dr. Louise G. Patikas, M.D., despite the fact that both opinions were "rendered prior to the receipt of objective medical testing which revealed" that Plaintiff had additional impairments that caused work-related physical limitations, [Doc. 8 at 12-15]; and

(iii) failing to find that Plaintiff was limited in his ability to kneel, squat, and climb despite the fact that Dr. Summers, whose opinion was purportedly accorded great weight and adopted, stated that Plaintiff was so limited, [Doc. 8 at 13].

The Court considers these allegations of error in turn.

### (i)     The ALJ's consideration of the opinion of Dr. Fernandes

Dr. Ingrid Fernandes, M.D., of REACHES Community Health Center in LaFollette, TN, treated Plaintiff during the period from April 19, 2005, through May 15, 2008, primarily for diabetes control. [Doc. 8 at 10]; [Tr. 374]. On February 25, 2008, Dr. Fernandes provided an opinion letter [Tr. 374] to the SSA. In the letter Dr. Fernandes stated the following:

> "This letter was written at the request of [Plaintiff]. [Plaintiff] has diabetes mellitus, dependant on insulin for control, and hepatitis C. He also has a rheumatoid factor positive, suggesting a possibility of rheumatoid arthritis and rotator cuff injury with full thickness tear in his left shoulder. **All these medical problems are permanent and he will never recover from these unfortunately. [Plaintiff]'s rotator cuff tear in his left upper extremity prohibits him from using his upper extremity for any amount of lifting or any significant physical work.** He sees us regularly for control of his diabetes."

[Tr. 374] (emphasis added).

The ALJ considered Dr. Fernandes's opinion letter, and he expressly discussed it in his

narrative decision as follows:

> "In February 2008, in a letter written at the claimant's request, Dr. Fernandes opined that the claimant's left upper extremity rotator cuff tear prevented him from using his upper extremity for any amount of lifting or any significant physical work. However, in August 2006, Dr. Fernandes encouraged the claimant to increase his physical activity in the daytime to help manage his medical conditions.
>
> The undersigned gives greater weight to Dr. Summers's opinion than to that of Dr. Fernandes, as Dr. Summers's opinion is more consistent with the overall evidence of record, including physical examination findings; objective diagnostic test results; treatment; and medications."

[Tr. 20].

Plaintiff contends that the ALJ "erred in rejecting th[e] opinion of a treating physician in favor of the opinion of the consultative examiner, Dr. Summers." [Doc. 8 at 11]. Plaintiff argues that because Dr. Fernandes was a treating physician, his opinion that Plaintiff was precluded from "using his upper extremity for any amount of lifting or any significant physical work" was entitled to receive controlling weight in the ALJ's RFC determination process. [Doc. 8 at 10-12]. Plaintiff argues that the ALJ did not provide any valid reasons for discounting Dr. Fernandes's opinion. Plaintiff concludes that the ALJ's failure to give controlling weight to Dr. Fernandes's opinion caused the ALJ to incorrectly find that Plaintiff can perform light work, but cannot "use either arm over shoulder level," and can only bend and stoop occasionally. [Tr. 17]. Though it is not clear from Plaintiff's memorandum, Plaintiff appears to argue that Dr. Fernandes's opinion should have compelled the ALJ to find that he was incapable of performing light work at all.

In response, the Commissioner contends that the ALJ's decision to discount the weight accorded to Dr. Fernandes's opinion was appropriate because the opinion was inconsistent with

clinical evidence, and inconsistent with Dr. Fernandes's own "treating records showing that Plaintiff's pain was controlled with medication and that he was encouraged to continue with increased physical activity." [Doc. 15 at 14]. The Commissioner further contends that even if Dr. Fernandes's opinion had been given controlling weight, it would not have compelled a finding that Plaintiff did not have the RFC to perform light work at all. The Commissioner argues that "the restrictions noted in Dr. Fernandes's February 25, 2008, opinion letter pertain only to Plaintiff's left upper extremity, unlike the RFC assessment by the ALJ, which, consistent with the medical evidence and Plaintiff's testimony, accounts for Plaintiff's limitations with respect to both shoulders." [Doc. 15 at 14]. In other words, the Commissioner argues that Dr. Fernandes's opinion is not inconsistent with the ALJ's RFC finding. Accordingly, the Commissioner argues that if any error was committed by the ALJ in failing to accord Dr. Fernandes's opinion controlling weight or in failing to provide good reasons for discounting the opinion, it was a harmless error.

The Court agrees with the Commissioner's second contention, and finds that Dr. Fernandes's opinion letter [Tr. 374] is not inconsistent with the ALJ's physical RFC finding. While Dr. Fernandes stated that Plaintiff's "rotator cuff tear *in his left upper extremity* prohibits him from using his upper extremity for any amount of lifting or any significant physical work," [Tr. 374] (emphasis added), it is not completely clear from his letter whether he intended to communicate that Plaintiff was only precluded from using his *left* upper extremity, or that Plaintiff was precluded from using his *entire* upper body. The Court finds that it is most natural to read Dr. Fernandes's letter as expressing an opinion that Plaintiff was only precluded from using his left arm. Accordingly, the ALJ's finding that Plaintiff had the RFC to perform light work, but was unable to "use either arm over shoulder level," and was only able to bend and stoop occasionally, [Tr. 17], is not inconsistent

with Dr. Fernandes's opinion.

"Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). A job may be also considered to require "light work" even if it requires very little or no lifting and carrying. Id. For example, jobs that require a good deal of walking or standing and jobs that require sitting most of the time with some pushing and pulling of arm or leg controls are considered to require "light work." Id. Nothing in Dr. Fernandes's opinion letter indicates that Plaintiff is completely precluded from lifting or carrying objects weighing 10 to 20 pounds with his right arm. Also, nothing in the letter indicates that Plaintiff cannot perform "light work" as it is generally defined in the regulations. The ALJ considered Dr. Fernandes's letter, and his ultimate RFC determination appropriately incorporated Dr. Fernandes's opinion.

The Court concludes that because the ALJ's RFC finding is not inconsistent with Dr. Fernandes's opinion, any procedural errors that the ALJ may have committed when evaluating the opinion were harmless. See Wilson, 378 F.3d at 546-47 (stating that an ALJ's violation of the SSA's procedural rules is harmless and "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses").

(ii)     **The ALJ's reliance on opinions that were not based on a review of Plaintiff's complete medical record**

Plaintiff contends that the ALJ erred by adopting the opinions of examining DDS physician Dr. Jeffrey S. Summers, M.D., and non-examining, consultative DDS physician, Dr. Louise G. Patikas, M.D., despite the fact that both opinions were "rendered prior to the receipt of objective

medical testing which revealed" that Plaintiff had additional impairments that caused work-related physical limitations. [Doc. 8 at 12-15]. Plaintiff argues that objective medical evidence revealing impairments "which would adversely affect [his] ability to perform light work" became part of his medical record *after* Dr. Summers and Dr. Patikas provided their assessments. [Doc. 8 at 14]. Specifically, Plaintiff argues that between September 20, 2005, and December 27, 2006, the following additional objective evidence became part of his record: left knee x-rays, cervical spine x-rays, left shoulder x-rays, pulmonary function tests, and a left shoulder MRI. [Doc. 8 at 13-14]. Plaintiff argues that the ALJ should not have relied upon the opinions of Dr. Summers and Dr. Patikas because neither doctor was able to consider the additional objective medical evidence when formulating his opinion.[6]

In response, the Commissioner argues that the ALJ's reliance on the opinions provided by Dr. Summers and Dr. Patikas was appropriate even in light of the additional objective evidence cited by Plaintiff because that evidence is consistent with both opinions. [Doc. 15 at 14]. Further, the Commissioner argues that the additional objective evidence is not inconsistent with the ALJ's ultimate RFC determination.

The ALJ expressly discussed the opinions of Dr. Summers and Dr. Patikas, *and* the additional objective evidence cited by Plaintiff in his narrative decision. [Tr. 19] (discussing Plaintiff's "left shoulder MRI performed in December 2006," "left knee x-rays performed in September 2005," and "cervical spine x-rays performed in February 2006"). Plaintiff argues that it was error for the ALJ to consider the additional objective evidence on his own, because he was

---

[6] Dr. Summers's report [Tr. 291-96] of his "all systems examination" of Plaintiff is dated August 17, 2005, and Dr. Patikas's "RFC Assessment" [Tr. 305-12] is dated September 7, 2005.

"not a medical expert or someone otherwise capable of determining the physiological effects of various medical conditions." [Doc. 8 at 14]. Plaintiff seems to argue that rather than according any weight to the opinions of Dr. Summers and Dr. Patikas, the ALJ should have requested a new review of Plaintiff's medical record by a state DDS physician so that a "medical expert"–instead of the ALJ himself–could consider the additions to the record that occurred after September 7, 2005.

The Court disagrees with Plaintiff, and finds that the ALJ's reliance on the opinions of Dr. Summers and Dr. Patikas was not an error. In every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion. Frequently, new evidence about the claimant's condition will come to light during the intervening period of time. The SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided. Although ALJs are not to play doctor, they are not required to filter every piece of objective medical evidence in a claimant's record through a DDS or other physician before they may consider it. An ALJ is permitted to use his expertise and common sense to determine whether objective medical evidence that became part of a claimant's record after a medical opinion was rendered is inconsistent with the opinion to such a degree that the opinion is no longer reliable.

In this case, Plaintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of Dr. Summers and Dr. Patikas. Plaintiff makes no effort to explain what impairments and limitations were demonstrated by the new evidence. Instead, Plaintiff merely asserts that the evidence "reveals medically determinable impairments which would adversely affect [his] ability to perform light work." [Doc. 8 at 14]. Plaintiff has not explained how a review of the

new evidence he cites would have changed the opinions provided by Dr. Summers and Dr. Patikas. Accordingly, the Court cannot find error in the ALJ's decision to rely upon the doctors' opinions.

### (iii)     The ALJ's articulation of Plaintiff's specific additional limitations beyond a general restriction to light work

Plaintiff contends that the ALJ erred by failing to find that he was limited in his ability to kneel, squat, and climb despite the fact that Dr. Summers, whose opinion was purportedly accorded great weight and adopted, stated that he was so limited.  [Doc. 8 at 13].  The Commissioner responds that the ALJ's RFC finding *did* in fact incorporate Dr. Summers's conclusion that Plaintiff was limited in his ability to kneel, squat, and climb.  The Commissioner explains that Dr. Summers only found that Plaintiff "would have difficulty [kneeling, squatting, and climbing] 'on a frequent basis,'" instead of finding that Plaintiff was totally precluded from performing those activities.  [Doc. 15 at 13].  Accordingly, the Commissioner argues that the ALJ's RFC finding is consistent with Dr. Summers's conclusion about Plaintiff's ability to kneel, squat, and climb.  The Court agrees.

Dr. Summers opined that "it is reasonable to expect that [Plaintiff] will have difficulty with bending, stooping, kneeling, squatting, climbing, and lifting greater than 20 lbs. on a frequent basis." [Tr. 295].  In his narrative decision, the ALJ accurately summarized Dr. Summers's opinion as follows: "Dr. Summers essentially opined that the claimant could perform light work as defined in the Regulations with only occasional bending, stooping, kneeling, squatting, and climbing."  [Tr. 19].  The ALJ then found that Plaintiff could perform light work except that he could "do only occasional bending and stooping."  [Tr. 17].  Plaintiff argues that the ALJ erred by failing to expressly include that he could also do *only occasional* kneeling, squatting, and climbing.

The Court rejects Plaintiff's argument.  There is no need to engage in semantics to understand that the ALJ meant to incorporate Dr. Summers's opinion into his RFC finding.  Though

the ALJ did not expressly state that Plaintiff "can do only occasional kneeling, squatting, and climbing," it was unnecessary for him to do so. A person who can only occasionally bend and stoop can also only occasionally squat, kneel, and climb. Further, Plaintiff has not shown that the addition to his RFC finding of a specific limitation on his ability to squat, kneel, and climb would have resulted in a different ultimate determination of his claim. The vocational expert in this case testified that, based on Plaintiff's RFC as found by the ALJ, Plaintiff could work as a textile folder, garment bagger, or garment sorter. [Tr. 21]. There is no reason to think that the vocational expert would have testified differently if the ALJ had informed him that Plaintiff could only kneel, squat, and climb occasionally.

### 2.       *Mental RFC determination*

Plaintiff contends that the ALJ erred when determining his mental RFC by failing to specifically find that he was moderately limited in his abilities to persist and concentrate, work with the public, and adapt. Plaintiff argues that such a finding was appropriate because it was the conclusion of DDS psychological examiner Alice Garland, M.S., presented in "the only medical opinion of record regarding Plaintiff's work-related mental limitations." [Doc. 8 at 15]. The Commissioner responds by arguing simply that the ALJ in fact "discussed Ms. Garland's findings at length," and that the ALJ's mental RFC finding appropriately incorporated Ms. Garland's opinion. [Doc. 15 at 13].

The Court agrees with the Commissioner's position, and finds that the ALJ properly considered Ms. Garland's opinion. On June 20, 2007, Ms. Garland examined Plaintiff. [Tr. 365-70]. Ms. Garland estimated Plaintiff's "ability to relate as adequate to fair," [Tr. 368], and she concluded as follows:

"In regards to the medical assessment, the claimant appears to be a

man who would have marked limitations in ability to do complex and detailed work. Ability to persist and concentrate, work with the public and adapt appear to be moderately limited by the claimant's emotional state."

[Tr. 369-70].

The ALJ expressly discussed Ms. Garland's opinion, and he specifically stated that he gave the opinion "great weight in finding moderate mental limitations." [Tr. 17]. Contrary to Plaintiff's assertion that "the ALJ failed to even mention the limitations noted by Ms. Garland," [Doc. 8 at 15], the ALJ *clearly* discussed these limitations. As highlighted by the added emphasis in the following three paragraphs, the ALJ faithfully incorporated Ms. Garland's opinion into his narrative decision.

Ms. Garland opined that Plaintiff had "**marked limitations** in the ability to do complex and detailed work." [Tr. 369]. The ALJ found that Plaintiff had "**marked limitations** for performing complex or detailed work." [Tr. 17].

Ms. Garland opined that Plaintiff's general ability to relate was "adequate to fair," [Tr. 368], but she ultimately concluded that his ability to work with the public and adapt was "**moderately limited**," [Tr. 370]. The ALJ noted that Plaintiff was "apparently able to function in an appropriate manner in the public domain in such places as doctor's offices, grocery stores, and other facilities," [Tr. 16-17], but he ultimately concluded that Plaintiff had generally "**moderate**" emotional limitations, [Tr. 17], including "**moderate difficulties**" in social functioning, [Tr. 16].

Finally, Ms. Garland opined that Plaintiff's ability to persist and concentrate was "**moderately limited**." [Tr. 370]. The ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has **moderate difficulties**." [Tr. 17].

The Court concludes that the ALJ's mental RFC finding is wholly consistent with Ms. Garland's opinion. It is plain that the ALJ effectively adopted Ms. Garland's conclusions as his own

in his narrative decision. Plaintiff's contention that the ALJ erred when determining his mental RFC is therefore without merit.

### 3. Conclusion

The Court finds that the ALJ's determination of Plaintiff's RFC was supported by substantial evidence.

### C. The ALJ's finding that there are a significant number of jobs in the national economy suitable for Plaintiff to perform was supported by substantial evidence.

Plaintiff contends that the ALJ's finding that "there are jobs that exist in significant numbers in the national economy" that he can perform, [Tr. 21], was incorrect because it was reached through improper application of the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpt. P, App. 2. [Doc. 8 at 16-17]. Plaintiff argues that the ALJ improperly relied upon Guidelines Rule 202.10 based on a finding that Plaintiff had "marginal literacy" and the ability to communicate in English. [Doc. 8 at 16]. Plaintiff asserts that he was–and is–functionally illiterate, and that the ALJ therefore should have relied upon Guidelines Rule 202.09 which contemplates a claimant who is "illiterate or unable to communicate in English," [Doc. 8 at 16]. Plaintiff argues that Rule 202.09 should have compelled the ALJ to conclude that he was disabled because no suitable jobs existed for him to perform. Plaintiff concludes that the ALJ's failure to rely upon Rule 202.09 when reaching his decision was an error that warrants remand.

The Commissioner contends that the ALJ's finding that Plaintiff had "marginal literacy" and the ability to communicate in English was supported by substantial evidence. [Doc. 15 at 16]. Accordingly, the Commissioner concludes that "the ALJ's use of rules 202.17 and 202.10 *as guides*" was not error. [Doc. 15 at 17] (emphasis added). The Commissioner also argues that the ALJ's

finding that suitable jobs existed for the Plaintiff was based on testimony from a vocational expert, and *not* on a strict application of any rule in the Medical-Vocational Guidelines. [Doc. 15 at 15-16].

At step four of the Social Security Administration's five-step disability determination analysis, the Commissioner must determine whether a claimant is able to perform his past relevant work. 20 C.F.R. § 404.1520. If the Commissioner determines that the claimant cannot perform past relevant work, he must proceed to step five and determine whether jobs exist in the national economy that accommodate the claimant's residual functional capacity and vocational factors. Id.; 20 C.F.R. § 404.1560(c)(1). If such jobs exist in significant numbers in the national economy, then the claimant is not disabled. Id. The Commissioner bears the burden of proving the existence of a significant numbers of such jobs. Walters, 127 F.3d at 529; 20 C.F.R. § 404.1560(c)(2) (stating that the Social Security Administration is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [his] residual functional capacity and vocational factors").

The Commissioner can prove the existence of a significant number of jobs suitable for a claimant in two ways. First, the Commissioner can provide substantial evidence that suitable jobs exist with testimony from a vocational expert. See O'Banner v. Sec'y of Health, Educ. & Welfare, 587 F.2d 321, 323 (6th Cir. 1978). Second, if the limitations and restrictions imposed by a claimant's impairments are only exertional limitations *and* the claimant's specific vocational profile is listed in a rule contained in the Medical-Vocational Guidelines, then the Commissioner can directly apply that rule to establish that suitable jobs exist for the claimant. 20 C.F.R. § 404.1569a(b); 20 C.F.R. § 404, Subpt. P., App. 2 § 200.00(b) ("The existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the number of unskilled jobs that exist throughout the

28

national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy)...Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established."); Heckler v. Campbell, 461 U.S. 458, 461 (1986) (explaining that the Medical-Vocational Guidelines relieve "the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy"); Wright v. Massanari, 321 F.3d 611, 615 (6th Cir. 2003) ("Where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled.").

In this case, the ALJ did *not* find that Plaintiff's impairments imposed only exertional limitations on his ability to work. [Tr. 17]. The ALJ found that Plaintiff had moderate emotional limitations and "marked limitations for performing complex or detailed work" such that he could only perform "unskilled to semiskilled work." [Tr. 17]. The ALJ was therefore *not* entitled to rely on Table No. 2 of the Medical-Vocational Guidelines[7] to establish the existence of jobs suitable for Plaintiff. Instead, the ALJ was required to seek testimony from a vocational expert to resolve the question of whether suitable jobs existed for Plaintiff. And that is exactly what the ALJ did.

Contrary to Plaintiff's assertion that "the ALJ relied upon [Medical-Vocational Rule] 202.10 as a framework for the decision," [Doc. 8 at 16], the ALJ actually relied upon direct examination of a vocational expert, Ms. Jo-Ann Bullard, to reach his conclusion that suitable jobs existed for Plaintiff to perform. See [Tr. 58-63]. Accordingly, the Court interprets the last section of Plaintiff's memorandum, [Doc. 8 at 16-17], as an argument that the ALJ misrepresented Plaintiff's educational attainment in his hypothetical question to Ms. Bullard. When questioning Ms. Bullard, the ALJ

---

[7] Table No. 2 lists different potential combinations of vocational characteristics for claimants with the RFC to perform light work. 20 C.F.R. § 404, Subpt. P., App. 2, Tbl. 2.

instructed her to assume an individual with "marginal literacy as defined in the regulations." [Tr. 60]. Plaintiff argues that this instruction was improper because he was not–and is not–marginally literate. Plaintiff states that "Ms. Garland administered WRAT-III testing which revealed that [he] read at the third grade level." [Doc. 8 at 16] (citing [Tr. 369]). Plaintiff asserts that the Court of Appeals for the Sixth Circuit "has indicated that a reading level at the level of the third grade or below constitutes illiteracy." [Doc. 8 at 16] (citing Skinner v. Sec'y of Health and Human Servs., 902 F.2d 447, 448 (6th Cir. 1990)). Accordingly, Plaintiff argues that the ALJ should have instructed Ms. Bullard to assume an individual who is illiterate when he posed his hypothetical question.

In response, the Commissioner argues that the ALJ's hypothetical question accurately portrayed Plaintiff's educational attainment. The Commissioner argues that the ALJ's decision to present Plaintiff as marginally literate rather than illiterate was supported by substantial evidence, "including Plaintiff's formal education to the eighth grade, third-grade reading level, [and] fourth-grade math aptitude." [Doc. 15 at 16]. The Commissioner also argues that Skinner did not require the ALJ to present Plaintiff as illiterate because Plaintiff had a higher level of educational attainment than the claimant in Skinner who had "completed school only up to the third-grade level, read below a third-grade level, was unable to read a newspaper, had a math aptitude below the third-grade level, and was unable to do much more than spell his own name." [Doc. 15 at 16] (citing 902 F.2d at 448).

The ALJ instructed Ms. Bullard to assume an individual with "marginal literacy *as defined in the regulations*." [Tr. 60] (emphasis added). The term "marginal literacy" is not defined in the SSA's regulations, but the terms "illiteracy" and "marginal education" are explained as follows:

> "(1) *Illiteracy*. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the

person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) *Marginal education*. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."

20 C.F.R. §§ 404.1564(b); 416.964(b).

A claimant's educational abilities are presumed to match the numerical grade level that he completed in school unless there is other evidence to contradict this presumption. Id. Expert opinions and Wide Range Achievement Test ("WRAT") results are both examples of the types of other evidence that can be used to contradict the presumption that a claimant has an educational level equivalent to the highest grade level that he completed in school. See Skinner, 902 F.2d at 451.

Contrary to Plaintiff's assertion, the Court of Appeals for the Sixth Circuit did not indicate in Skinner that "a reading level at the level of third grade of below constitutes illiteracy," [Doc. 8 at 16]. In fact, the Court of Appeals did not clarify the regulatory definitions of "illiteracy" or "marginal education" at all in Skinner. Instead, the court simply reviewed one claimant's particular case and determined that, based on the claimant's record, there was substantial evidence to support only one conclusion: the conclusion that the claimant was illiterate. 902 F.2d at 451. The court did not indicate which types of evidence *generally* support a finding of illiteracy. Accordingly, Skinner is not a very helpful guide for resolving Plaintiff's appeal in this case.

In this case, there is a limited amount of evidence indicating Plaintiff's level of educational attainment, and the evidence that is available is contradictory. Plaintiff testified at the ALJ hearing that he completed eighth grade in regular classes. [Tr. 28]. Ms. Garland, the DDS psychological examiner, administered a WRAT–III test and reported that Plaintiff read on a third-grade level. [Tr.

369]. Ms. Garland also reported that Plaintiff told her that he completed eighth grade. [Tr. 366].

Plaintiff testified that he did not dispute the fact that he read at a third grade level. [Tr. 29]. Ms.

Garland opined that Plaintiff had "borderline to low average intellectual functioning," and that his

"reading and math skills [were] poor." [Tr. 369]. There is no other clear evidence of Plaintiff's

educational attainment in the record.[8]

The ALJ considered the above evidence, and he determined that Plaintiff was not illiterate.

The Court finds that there was substantial evidence to support this determination. Plaintiff's

completion of the eighth grade and his WRAT test results are enough to support the ALJ's

determination that Plaintiff was in fact able to read and write a simple message. See 20 C.F.R. §§

404.1564(b)(1); 416.964(b)(1). The Court reiterates that it is immaterial whether the record may

also possess substantial evidence to support a different conclusion from that reached by the ALJ, or

whether the Court may have decided the issue differently. Crisp, 790 F.2d at 453 n.4. When

evidence is contradictory, as it was in this case, the Court will not "try the case de novo, nor resolve

conflicts in the evidence." Walters, 127 F.3d at 528. The Court concludes that the ALJ correctly

questioned the vocational expert in this case and thereby carried his burden of establishing that

suitable jobs existed for Plaintiff.

---

[8] The Court notes that Plaintiff appears to have completed both a "Work History Report" [Tr. 195-202] and a "Disability Report" [Tr. 224-28] in his own handwriting. Plaintiff's name appears printed in the box at the end of each form for the "name of person completing this form." [Tr. 202, 228]. The fact that Plaintiff was able to complete these forms is viewed by the Court as strong evidence that Plaintiff is not "illiterate" within the meaning of 20 C.F.R. §§ 404.1564(b), and 416.964(b). But the ALJ did not indicate that he considered Plaintiff's ability to complete the forms, and the Government did not raise the fact in support of its contention that substantial evidence supported the ALJ's characterization of Plaintiff as having "marginal literacy."

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[9] that the Plaintiff's Motion For Summary Judgment **[Doc. 7]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 14]** be **GRANTED**.

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[9]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).